## A89A0746. BRYSON v. THE STATE.
(384 SE2d 456)

BIRDSONG, Judge.

Gerald Paul Bryson was convicted of one count of child molestation and four counts incest, all relating to the same victim, his natural daughter. His appeal generally encompasses two alleged errors, the first being the "general grounds," i.e., that the evidence was insufficient to support the verdict and illegal because there was no corroboration of the victim's testimony, because the state did not prove the exact dates of the incidents charged, and because the victim otherwise denied her later accusation. The second error relates to appellant's wife's testimony that she and he left the state after he was informed the police wanted to talk to him about the allegations. *Held*:

1. The evidence in this case is sufficient to enable a reasonable trier of fact to rationally find proof of guilt beyond a reasonable doubt (*Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Rutledge v. State*, 245 Ga. 768, 769 (267 SE2d 199)), and is not illegal for any reason.

The count of child molestation was for the incident of sexual intercourse alleged to have occurred between March 1 and October 1, 1984, when the victim was 12 years old. The victim testified specifically that this incident occurred on or about the day her family moved to a new residence on Fite Street in Cartersville, in June or July 1984. These dates were not disproved. The four counts charged as incest were alleged, variously, to have occurred between May 1 and November 30, 1987.

The victim's testimony fully supported each accusation as to date, except as to the second count, which on the stand she testified occurred in November 1986, at least four months earlier than alleged. The remainder of the incestuous incidents were testified to by the

victim as having occurred in or about the month of August before she ran away on August 10, 1987.

The victim testified generally that the incidents of sexual abuse (incest) increased in the summer of 1987; that she fought with her stepmother because her stepmother was jealous of the attention Bryson paid his daughter until finally the stepmother left the domicile about August 5, after which Bryson did not cease his attacks but rather, it appeared to the victim that they would continue. She stated that her father explained the sex to her by saying "he done it out of love, that he cared about me." She testified that Bryson had frequently beat her and her stepmother and that her stepmother was afraid of him, and it was his threat to "stomp" her (the victim) that propelled her out of the house, to a neighbor's house on August 10. The investigating police officer testified that at 9:42 p.m. on August 10, 1987, he answered a domestic call at another house and found the victim, as follows: she was very upset and hysterical, was crying and real nervous, and "told me she had run away from home, that her father had been beating her and having sex with her." As to her demeanor, the officer testified the victim "seemed sincere about it and everything." He called the Bartow County Department of Family & Children Services (DFCS) and a social worker took the victim to the hospital. The examining physician testified the victim appeared from physical examination to have engaged in sexual intercourse more than once, and that when he questioned her about her accusation "[s]he impressed me as being sincere."

A DFCS worker testified that in April 1987, after the victim's cousin reported sexual abuse against the victim by appellant, she questioned the victim about the matter and the victim denied it was occurring or had occurred; but the worker, a trained specialist in child molestation cases, testified that it is not unusual for victims of incest and sexual abuse to deny the events, particularly if they have a bonded relationship with the parent.

The victim's stepmother, who had helped raise her from the age of five, testified that she and the victim fought frequently and that the victim resented the stepmother's authority and became extremely rebellious in 1987 after the victim had begun a reacquaintance with her natural mother. The stepmother testified also that the victim was bashful, that she refused to go to school because she was failing and saw no point in continuing, and that the victim loved her father. She denied ever having seen or suspected any unnatural relations between Bryson and his daughter.

The victim's natural mother testified that after her daughter came to live with her in November 1987, the daughter received a phone call from Bryson and became very upset, whereupon the mother grabbed the phone away and listened, to hear Bryson say,

"I'm sorry I hurt you." Bryson denied having said this. Other witnesses who had lived with the family from time to time testified they were not aware of any unnatural relations between Bryson and his daughter. It was shown, however, that these persons were not in the house at all times or at the times of the sexually abusive acts. One defense witness, who was a friend of the stepmother, testified she witnessed the stepmother and the victim fight and argue constantly but never saw the victim fight or argue with her father, and that the victim was very jealous of the stepmother's giving attention to anyone else. This witness also testified that after the victim had made the accusation against her father, the victim called this witness and said, "Oh God, what have I done?" and said that she and her father had never had "sexual contact"; that the victim that day asked the witness to meet her to talk but when the witness arrived at the designated place, the victim was not there.

The DFCS worker testified that in October 1987, after the victim had attempted to commit suicide, the victim's foster mother gave the social worker a photograph she found of Bryson, which the victim had cut with a knife.

The jury determines the weight of the evidence, and the credibility of the witness, and we only determine the sufficiency of the evidence to support the verdict according to the standard set forth in *Jackson v. Virginia*, supra. We do not speculate as to what the jury chose to believe or disbelieve, but only look to determine whether the evidence, fairly construed in favor of the jury's finding, supports the verdict under the *Jackson v. Virginia*, standard; the jury is empowered to resolve all conflicts in the evidence and when it has done so, we do not substitute our judgment for the jury's judgment. *Glover v. State*, 237 Ga. 859, 860 (230 SE2d 293).

The jury in this case obviously determined that the testimony of the victim was credible and was supported by the testimony of the investigative officer and examining physician who saw her soon after she ran away. The jury evidently resolved in the victim's favor the apparent conflicts in defense testimony, particularly that of the stepmother who testified that the victim was on the one hand bashful, but fought with her constantly and resented her authority; and that the victim loved her father and never fought with him but wanted to be free of the stepmother, whereas the evidence clearly showed the victim fled her father's house and custody soon after the stepmother went away. The jury undoubtedly found conflicts in the defense testimony that it resolved by the testimony of the victim and other state's witness, the evidence fully supports that resolution beyond a reasonable doubt.

Corroboration of the victim's testimony is not essential in a child molestation case (*Grayer v. State*, 181 Ga. App. 845, 847 (6) (a) (354

SE2d 191)) but there was corroboration in the res gestae evidence in this case, or in the evidence of the child's statements to others soon after she fled her father's house. Any other statements the child made to the interviewing DFCS worker when she was first asked about the abuse, or to the defense witness who testified the victim said there had been no "sexual contact," are reasonably explained, and the jury so found.

Finally, no fatal error inheres in the circumstance that the State alleged the second abuse act to have occurred between March and October 1987, while the victim testified specifically that it occurred in November 1986, for proof of the date of occurrence of such crimes is by nature generally unspecific; therefore, so long as the particular event is proved within the period of the statute of limitation, the verdict finding it to have occurred as alleged is not fatally infected on that basis alone. See *Carpenter v. State,* 167 Ga. App. 634 (307 SE2d 19), aff'd 252 Ga. 79 (310 SE2d 912).

2. The trial court did not err in permitting the State to question the stepmother about appellant's having left the state with her immediately after being told the police wanted to question him about the accusations of molestation. This evidence raised a legitimate issue of flight, which is a question for the jury's resolution. " 'Whether the acts of the defendant constitute flight, and were due to a consciousness of guilt, or whether such acts have an innocent explanation, is a question for the jury.' " *Carter v. State,* 180 Ga. App. 269, 270 (349 SE2d 19).

Appellant does not make clear why he contends this evidence here was inadmissible, except to suggest that the law did not require appellant to voluntarily take himself to be interviewed at the police station, but this is beside the point of the issue, for such fact does not authorize him to flee an imminent arrest. At least, if he does flee or commits some act that raises the question, that matter may be laid before the jury as possible evidence against him. Appellant has no grounds to complain of this as error, even if he had properly objected to it.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 12, 1989.

*Greene & Greene, Barry B. Greene,* for appellant.
*Darrell E. Wilson, District Attorney, Kimberly L. Schwartz, Assistant District Attorney,* for appellee.